IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGER WEIGLE | : | |
| Petitioner | : | |
| v. | : | Civil Action No.: DKC-16-352 |
| CARROLL PARISH, Warden, et al. | : | |
| Respondents | : | |

## MEMORANDUM OPINION

This Petition for Writ of Habeas Corpus was filed February 8, 2016, pursuant to 28 U.S.C. § 2254. On May 5, 2016, Respondents filed an answer to the Petition along with the record of the prior proceedings in the Maryland State courts. ECF No. 6. On June 6, 2016, Petitioner filed a response to the answer. ECF No. 7. Upon review of the papers filed, this court finds a hearing in this matter to be unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6; *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not necessarily entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

Petitioner asserts that his counsel was ineffective during his guilty plea and sentencing. Specifically, Petitioner contends he would not have pled guilty to second degree rape or would have withdrawn his plea if he had been advised by counsel the correct sentencing guidelines were twelve to eighteen years.

## **Background**

On March 13, 2000, Petitioner was charged in Anne Arundel County with seventeen counts related to the sexual abuse of a minor. ECF No. 6-2 at 1. As part of a plea agreement, Petitioner pled guilty to a single count of second degree rape. ECF No. 6-3. A plea hearing was held on

May 9, 2011.  During the plea colloquy the court advised Petitioner that the charge of second degree rape carried a maximum sentence of twenty years in prison and the court could sentence him up to the maximum regardless of the state's recommendation.  ECF No. 6-2 at 5-6.  Counsel for the state advised the court that the sentencing guideline for the offense was five to ten years, but Petitioner was cautioned by the court that he could receive a sentence below, within, or above the sentencing guidelines.  ECF No. 6-2 at 4, 6.  The plea colloquy also included a description of the rights Petitioner was forgoing by pleading guilty and the fact that Petitioner would be required to register as a sex offender for life.  ECF No. 6-2 at 9-14.  After Petitioner agreed that he was freely and voluntarily pleading guilty to second degree rape, the state's attorney read the factual basis of the plea into the record:

> Your honor, if this matter had proceeded to trial the state would have called its primary witness, Ms. Elizabeth Adams who is now 25 years of age, date of birth… Ms. Adams would testify that between the time period beginning approximately December 15th, 1999 to approximately June 30th of the year 2001, when she was ages 13 to 16 she was the victim of sexual abuse.  The perpetrator of that abuse was the Defendant before you, Roger Farrington Weigle.
>
> And during the time period that I mentioned he was first the finance [sic] and then husband of Ms. Adams' half-sister whose name is Christina Kerns (phonetic) Weigle.  That sister, Christina, is approximately nine years older.  The Defendant, Your Honor, has a date of birth of...  During the time period of the events involving sexual abuse, he was approximately ages 25 to 27 and roughly 12 years older than Elizabeth Adams.
>
> Ms. Adams would testify that she recalled first meeting the Defendant when she was approximately six or seven years old when her older sister, Christina, started dating him.  She didn't have much contact or interaction with him until approximately age 12, at which point in the time he started paying attention to her.  He would start having conversations with her, and then began engaging in behavior where he would in her opinion start hitting on her.
>
> She would testify that during the time period of December, '99 through June 30th of 2001 that she would spend time back and forth between her family's home in

Virginia -- in Manassas, Virginia and the Defendant's home where he lived with Christina at 509 Club Road, Tracy's Landing located in Anne Arundel County, Maryland. She would visit both on her own and with her family and the Defendant would in turn visit her family in Virginia. Your Honor, the testimony that she would provide at any trial in this matter would include both events from her memory and events that were recorded in a diary at the time that those events occurred. And with respect to the incidents of sexual abuse she would be able to recall that this behavior started with the Defendant giving her cigarettes, marijuana, and alcohol, and after providing her with those items the Defendant would often -- on occasions would pull on the front of Elizabeth's shirt so that he could look down the front of her shirt. He would also provide opportunities for her to view him in the bathroom, use the bathroom with the door open so that she was able to see his penis.

Ms. Adams would testify that she recalled the first incident of sexual abuse occurring in late December of 1999 at the Club Road address in Anne Arundel County, Maryland around Christmas time when the Defendant took her hand and placed it on his penis over clothing for approximately three to five seconds, and she believed that his penis was erect when he did this. Incidents of abuse did progress to include other -- other acts, Your Honor. She recalls that in early 2000 in Virginia, Ms. Adams does, that the Defendant would place her hand on his penis and start moving her hand around both over clothing and underneath clothing. He would also put his hand on her vagina -- Ms. Adams' vagina both over clothing and underneath clothing and remembers two such occasions in the basement of her home in Virginia in early 2000. These events progressed to include digital penetration where he would put his finger inside of her vagina and on those occasions, she would simultaneously touch his penis.

Around the point in time where the activity had progressed to include those acts in early 2000 she recalled that the Defendant started talking with her about a relationship, about having a relationship with her that she interpreted to be both an emotional relationship where he cared about her and a physical relationship that involved sexual activity. The sexual activity progressed to include fellatio which she performed upon him on a number of occasions and cunnilingus that he would perform upon Ms. Adams on multiple occasions both at the Club Road address in Tracy's Landing, Anne Arundel County, Maryland, and her home in Virginia.

The acts also progressed to include sexual intercourse, and with respect to Count II, Your Honor, which the offense date is March 13th of 2000, Ms. Adams would explain that she had been sent to the Defendant's home to spend some time away from Virginia because she had been cutting herself and her family thought that it might do her some good to get out of Virginia and go and spend some time at her sister's home in Tracy's Landing, and she remembers that her sister was actually

3

away camping, so she was staying at the home with the Defendant and that she stayed approximately one week. She remembers this being around the time that either the first act of sexual intercourse occurred, or this is when it was starting, and she remembers that the Defendant had given her ecstasy and then took her into his bedroom, that he performed sexual intercourse upon her while she was lying on her back, that he placed his penis into her vagina and engaged in intercourse to the point of ejaculation, which he did on her stomach. They then got into the shower together and spent the night in his bed sleeping naked. She recalled that the acts of sexual intercourse occurred two to three other times that same week in March of the year 2000 and these acts of sexual activity, including the fellatio, the cunnilingus, and the sexual intercourse occurred until she was just over 16 years of age, had just turned 16 in June of 2001. And actually, she turned 16 the month before, but she remembers that these acts start -- stopped around the age of 16, that it was approximately 10 to 15 times that he had engaged in sexual intercourse, cunnilingus, and fellatio with her in both of those locations, and that the reason that it stopped is that she stopped going over to the home.

Your Honor, other information would be presented in the form of testimony from other witnesses to include Virginia detectives, and that would include the fact that in the year of 2006 Virginia actually opened an investigation that was prompted by a letter from a marriage counselor, Dr. Hilker (phonetic), that had been seen by the Defendant and his wife, that was regarding a disclosure during therapy that a sexual relationship had occurred with Elizabeth Adams when she was 13 years of age. Now that actually -- that letter was written in late 2004 but didn't make its way -- kind of ended up here in Maryland and made its way to Virginia much later, but that prompted an investigation to be opened. Ms. Adams was not ready to participate in an investigation due to ongoing mental health treatment for depression and anxiety related to this incident and asked for the case to be closed. In 2009 Virginia police took a report of an overdose with respect to Ms. Adams and that during the course of their investigation into that matter she related the fact that she was the victim of sexual abuse. Ms. Adams was then hospitalized for two weeks in March of 2010 and it was after that hospitalization on April 2nd of 2010 that she was ready to make a report and she did so to the Anne Arundel police. That investigation was conducted by Detective Hartzel (phonetic) with the Anne Arundel County Police Criminal Investigations Division. He gathered the information from her, the Virginia detectives, as well as from two friends of Ms. Adams who she told about the abuse at the time that it was ongoing. They would both testify. Ms. Kara Funk (phonetic) and Ms. Nicole Cofinnow (phonetic) that they were friends with Elizabeth Adams when they were 13 and 14 years of age and during that time when Ms. Adams -- Elizabeth Adams was that age she told both of them that she was having sexual intercourse with the Defendant before -- Mr. Weigle. As well Dr. Hilker was prepared to testify with respect to the disclosure that was made to him during the therapy in 2004.

4

> Your Honor, all events occurred in Anne Arundel County, Maryland, Mr. Weigle would be identified as the gentleman seated next to Mr. Martucci before you this afternoon, and that would be the summary of the evidence the State would have presented had this matter gone to trial.

ECF No. 6-3 at 15-21.

Petitioner appeared for his sentencing hearing on June 27, 2011. ECF No. 6-4. At the start of the hearing the judge called a bench conference. ECF No. 6-4 at 4-5. The record, which contains indiscernible portions of dialogue, indicates that the bench conference involved a discussion regarding a change in the sentencing guideline range due to Petitioner's past criminal history. Following the bench conference, Petitioner's counsel proceeded to admit mitigation evidence, including a report from a psychiatrist and testimony from Petitioner's father, father-in-law, neighbor, and employer. ECF No. 6-4, at 17-26. The court sentenced Petitioner to twenty years, all but ten years suspended. ECF No. 6-4 at 28.

Petitioner did not file an application for leave to appeal the entry of his plea. He did, however, file a motion for modification of sentence on July 13, 2011. ECF No. 6-2 at 7. Petitioner filed an application for postconviction relief on October 4, 2012. ECF No. 6-5. Petitioner argued, *inter alia*, that his counsel failed to advise him that the sentencing guideline range stated at the plea hearing (five to ten years) was incorrect and that the correct guideline range was ten to eighteen years. ECF No. 6-5 at 6-7. Petitioner asserted in his postconviction petition that he would not have pled guilty if he knew the correct guideline range.

An evidentiary hearing was held on Petitioner's postconviction claims on August 11, 2011. ECF No. 12-1. The Circuit Court heard testimony from Petitioner, his father, his wife, his trial counsel, and the state's attorney. Following the hearing, the Circuit Court issued an opinion,

concluding that Petitioner failed to show that he received ineffective assistance of counsel. ECF No. 6-6. Petitioner's application for leave to appeal was denied by the Court of Special Appeals on April 4, 2015. ECF No. 6-8. Petitioner filed the instant petition for federal habeas relief on February 8, 2016.

## Threshold Considerations

### Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals), and with other claims by way of a post-conviction petition, followed by seeking leave to appeal in the Court of Special Appeals.

Petitioner no longer has any state direct appeal or collateral review remedies available to him with respect to the claims raised in this court; thus, his claims are considered exhausted for the purpose of federal habeas corpus review.

### Statute of Limitations

Respondents' answer asserts that the Petition is time-barred. The court issued an Order on May 29, 2018, staying the matter and holding it in abeyance pending the resolution of a timeliness issue by the Fourth Circuit Court of Appeals. ECF No. 9. Respondents' answer posed an unresolved question of whether Petitioner's motion for modification of sentence possibly tolled the statute of limitations. On April 17, 2019, the Fourth Circuit issued an opinion in *Mitchell v. Green*, 922 F.3d

187 (4th. Cir. 2019), holding that Maryland Rule 4-345, providing for reconsideration of sentence, tolls the one-year statute of limitations in § 2244(d).

After the Fourth Circuit's holding in *Mitchell* and upon review of the record, the court finds the Petition to be timely. A petition is subject to the following statutory limitations period:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(l). This one-year period is, however, tolled while properly filed state post-conviction proceedings are pending. *See Id.* at § 2244(d)(2).

Petitioner was sentenced by the Anne Arundel Circuit Court on June 27, 2011. Thus, his judgment of conviction became final by the conclusion of direct review on July 27, 2011. *See* Md. Rule 8-204 (providing an application for leave to appeal must be filed within 30 days of judgment). Petitioner filed a motion for modification of sentence on July 13, 2011. The Circuit Court entered an Order holding Petitioner's motion for modification of sentence *sub curia*. ECF No. 6-2 at 7.

Per the holding in *Mitchell*, Petitioner's motion for modification of sentence tolled the statute of limitations. According to Maryland Rule 4-345, a motion for modification of sentence terminates after five years.[1] Here, Petitioner's motion was denied on August 24, 2015.[2] Because the motion for modification of sentence tolled the statute of limitations until then, Petitioner's federal habeas Petition was timely when it was filed on February 8, 2016.

## Independent and Adequate State Ground

Respondents contend that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because Petitioner failed to appeal his guilty plea. ECF No. 6 at 18. Petitioner argues that his claim is not procedurally defaulted because Maryland law required him to bring his ineffective assistance of counsel claim during a postconviction proceeding, citing *Davis v. State*, 285 Md. 19 (1979) and *O'Connor v. Warden*, 6 Md. 590 (1969). When ruling on Petitioner's application for post-conviction relief, the Anne Arundel Circuit Court cited Maryland's criminal statute concerning waiver of allegations of error, Md. Code Ann., Crim. Proc. § 7-106,[3] and concluded:

---

[1] A five-year limit on the court's authority to modify a sentence was added to the Rule effective July 1, 2004. *See, Tasker v. Maryland*, No. AW 11-CV-1869, 2013 WL 425040, at *3 (D. Md. Jan. 31, 2013), *aff'd,* 517 F. App'x 172 (4th Cir. 2013), and *abrogated by Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019).

[2] Petitioner also filed an application for post-conviction relief on October 12, 2012, which remained pending until the Court of Special Appeals summarily denied his application for leave to appeal on April 16, 2015.

[3] The opinion specifically refers to § 7-106(b)(1)(i)(3), which states, "on direct appeal, whether or not the petitioner took an appeal." Section 7-106(b)(1)(i)(4) states, "in an application for leave to appeal a conviction based on a guilty plea." It is apparent from the remainder of the opinion that the Circuit Court was analyzing Petitioner's conviction based on a guilty plea. As

> In this case Petitioner knowingly and voluntarily failed to raise allegations of error by appeal. Petitioner has further failed to present any special circumstances to excuse waiver. It is clear at the plea hearing on May 9, 2011, and at the sentencing on June 27, 2011, the Petitioner was adequately advised of his post trial options and understood his appellate rights. At the plea hearing, the judge informed the Petitioner that he could ask the Court of Special Appeals for permission to appeal and informed the Petitioner he had ten (10) days to file a request for a new trial. At sentencing, the trial judge informed Petitioner he had thirty (30) days to file a request for leave to appeal, ninety (90) days to request a modification of sentence, and thirty (30) days to ask for a panel review of his sentence…
>
> …Petitioner had time between the plea and the sentencing to file a Motion for a New Trial or Motion to Withdraw a Guilty Plea. Petitioner took neither of these actions, nor did he request his attorney do so. Petitioner did file a Motion for Modification of Sentence on July 13, 2011. As such, the Court finds that Petitioner has waived his claim of ineffective assistance of counsel.

ECF No. 6-6 at 5-6. The Circuit Court went on to address Petitioner's ineffective assistance of counsel claim, stating "…even if Petitioner's allegation of error wasn't waived, the Court finds that Petitioner's claim fails on the merits."[4] ECF No. 6-6 at 6.

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Principles of comity accordingly dictate that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal

---

such, the court interprets the Circuit Court's reference to "§ 7-106(b)(1)(i)(3)" as a typographical error.

[4] The court is bound to address the adequacy of the state procedural bar notwithstanding the Circuit Court's decision to address the merits of Petitioner's claim. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10 (1989) (A decision which bases dismissal both on the merits and on an independent and adequate state law ground forecloses federal habeas review.).

habeas claim." *Jones v. Sussex I State Prison*, 591 F.3d 707, 715 (4th Cir. 2010). Review of a procedurally defaulted claim is pretermitted unless the petitioner establishes either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "a fundamental miscarriage of justice." *Lewis v. Wheeler*, 609 F.3d 291, 309 (4th Cir. 2010) (quoting *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006).

"A federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Barnes v. Thompson*, 58 F.3d 971, 974 n. 2 (4th Cir. 1995)). However, we are obliged to ensure that the procedural rule applied by the state courts is adequate to preclude federal review of the underlying claim. *Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir. 2000). Whether a state procedural rule is adequate to preclude federal review is a question of federal law. *Beard v. Kindler*, 558 U.S. 53, 60 (2009).

A state rule is "adequate" if it is "firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. 605, 606 (2016). The relevant inquiry is not whether the procedural rule is applied in all cases, but "whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous." *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000). Because procedural default is an affirmative defense, the State bears the burden to establish the adequacy of a state procedural bar. *Jones*, 591 F.3d at 716.

The Fourth Circuit addressed the question of whether the failure to appeal a guilty plea in Maryland was an independent and adequate state bar to an ineffective assistance of counsel claim in *Woodfolk v. Maynard*, 857 F.3d 531 (4th Cir. 2017). The Respondents in *Woodfolk* took the position that Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i)(4) procedurally barred an ineffective

assistance of counsel claim brought for the first time during postconviction proceedings. The Fourth Circuit acknowledged, "[t]he Maryland courts have long recognized that ineffective assistance of counsel claims generally will not be considered on direct appeal, but instead should be raised in postconviction proceedings." *Id.* at 547. The Fourth Circuit also acknowledged that Maryland courts have not approved the application of a waiver to ineffective assistance of counsel claims that were not brought on appeal. *Id.* at 552. The Fourth Circuit held, "[t]he State's failure to establish that the bar is regularly and consistently applied to claims analogous to Woodfolk's claim renders the bar inadequate and, consequently, permits a federal habeas court to address his claim of ineffective assistance of counsel." *Id.* at 552-553. The court finds *Woodfolk's* holding applicable to the waiver imposed by the Circuit Court for Petitioner's failure to appeal his guilty plea.[5] Respondents have not provided any argument as to why the court should depart from Fourth Circuit precedent on this issue.[6]

The Circuit Court opinion appears also to conclude that Petitioner waived his claim because he failed to engage in motion practice prior to sentencing. The court finds application of a waiver under these circumstances particularly problematic. Petitioner contends that he did not find out about the factual basis of his ineffective assistance of counsel claim until the sentencing hearing

---

[5] As discussed at length herein, the Circuit Court relied heavily upon testimony elicited during Petitioner's post-conviction proceedings to determine the merits of his ineffective assistance of counsel claim. This testimony would have been unavailable to Petitioner during a direct appeal.

[6] In *Woodfolk*, "the State fail[ed] to point to a single case in which the Maryland courts have barred review of an ineffective assistance claim on postconviction review because it was not raised in an application for leave to appeal a conviction based upon a guilty plea." *Woodfolk v. Maynard*, 857 F.3d 531, 550 (4th Cir. 2017). Respondents in this matter too do not cite any case supporting the procedural bar.

occurred. The Circuit Court's imposition of a waiver for failure to engage in pre-sentencing motion practice imposes a burden on Petitioner to seek relief before he was aware of the grounds on which relief stood. A procedural bar is inadequate to preclude federal review under certain rare conditions, such as when "discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law…. a state ground applied infrequently, unexpectedly, or freakishly may discriminat[e] against the federal rights asserted and therefore rank as inadequate" *Walker v. Martin*, 562 U.S. 307, 320 (2011) (internal citations omitted). Furthermore, Respondents have not provided the court with any authority for the proposition that failure to file a motion for a new trial or a motion to withdraw a guilty plea under these circumstances is an adequate state procedural bar.[7] Accordingly, the court may reach the merits of Petitioner's ineffective assistance of counsel claim.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S.

---

[7] Under Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i), the only procedural mechanism mentioned in connection with a guilty plea is the failure to file an appeal. The statute does not mention the failure to file a motion for a new trial or motion to withdraw a guilty plea as grounds for waiver of an alleged error.

86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(a). A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under Section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court

13

decision was based on an unreasonable determination of the facts. *Id.* This standard was "meant to be" one that is "difficult to meet...." *Richter*, 562 U.S. at 102.

Further, the habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

## Analysis

Petitioner asserts that he was denied effective assistance of counsel during his guilty plea and sentencing because his counsel failed to inform him of the correct guidelines range for second degree rape. Petitioner avers that he would not have pled guilty had he known the guidelines range in his case was twelve to eighteen years instead of five to ten years. Respondents contend the record supports the Circuit Court's conclusion that Petitioner's ineffective assistance of counsel claim lacks merit.

The Circuit Court issued a written opinion denying Petitioner's ineffective assistance of counsel claim (in pertinent part):

> Here, Petitioner's sentencing occurred nearly two months after he entered his plea. When the discrepancy in sentencing guidelines was noticed by the Court and counsel was called to the bench, there was an opportunity for Petitioner to withdraw his plea prior to sentencing. Defendant counsel Louis J. Martucci testified that he consulted with his client regarding the change in sentencing guidelines and

acknowledged to the Court that the adjusted twelve (12) to eighteen (18) year sentencing guidelines was in fact correct. Petitioner argues that not enough time elapsed between the bench conference discussing the guidelines and sentencing for counsel to consult with him about the new guidelines. Notwithstanding the fact that any discussion between counsel and Petitioner would likely have been off the record, counsel and Petitioner had knowledge of the adjusted guidelines prior to sentencing. The Presentencing Investigation with the noted adjustment in the attached sentencing guidelines was emailed to counsel before the June 27, 2011 sentencing.

Even if Petitioner did not have knowledge of the adjusted guidelines, this case was not a guidelines plea. The Assistant State's Attorney, Sandra Howell, testified that the trial judge was not bound by the guidelines. The trial judge made it clear that Petitioner's plea was an open plea and the trial judge had discretion to determine the appropriate sentence up to the maximum penalty of twenty (20) years' incarceration for Second Degree Rape. Petitioner faced an indictment of seventeen (17) counts carrying up to one hundred and thirty (130) years of potential incarceration. By pleading guilty to one count that carried a maximum sentence of twenty (20) years, Mr. Martucci followed Petitioner's request and their discussed objective to limit the exposure to potential consecutive counts that Petitioner faced. When Petitioner received a sentence of twenty (20) years with all but ten (10) years suspended, Petitioner received an actual sentence within the original guidelines of five (5) to ten (10) years, guidelines that Petitioner testified he discussed with his counsel…

Furthermore, it may have been a tactical decision for Mr. Martucci not to make a motion to withdraw Petitioner's plea. Mr. Martucci testified that in his professional opinion, the strength of the evidence against Petitioner was overwhelming. Mr. Martucci testified that he based this opinion on police reports, the victim's diary entries, and Petitioner and his wife's admissions to a marriage counselor. Mr. Martucci further testified that he took steps to create a mitigation package for Petitioner that included character witnesses and a favorable report from Dr. Berlin. Mr. Martucci stated that he never promised Petitioner a particular sentence but was hopeful to get a lesser sentence. In light of the evidence and circumstances surrounding the charges Petitioner faced, the Court finds that Mr. Martucci's representation was the result of reasonable professional judgment and sound trial strategy and that it did not prejudice Petitioner's case under the requirements of the Sixth Amendment. *Strickland*, 466 U.S. at 690.

ECF No. 6-6 at 10-14.

Ineffective assistance of counsel claims are governed by the settled doctrine of *Strickland v. Washington,* 466 U.S. 668 (1984). It is equally settled that this doctrine applies to ineffective assistance claims asserted in connection with guilty pleas. *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) *citing, Hill v. Lockhart,* 474 U.S. 52, 57 (1985). In *Strickland*, the Supreme Court explained that to show constitutionally ineffective assistance of counsel, Petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To satisfy the performance part of the *Strickland* standard, Petitioner must demonstrate that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. Petitioner must show that the attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). Judicial scrutiny of counsel's performance must be highly deferential and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

Further, Petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). Under the Sixth Amendment,

16

a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In the context of plea proceedings, the performance standard remains the same, but the prejudice prong of the test was enunciated by the Supreme Court as, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. The Court emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland,* 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356 (2010).

The Circuit Court found the representation provided by Petitioner's counsel consistent with Petitioner's instructions to mitigate his exposure to possible consecutive sentences. The Circuit Court also found counsel's representation to be the result of sound professional judgment, especially considering the strength of the evidence and the potential one hundred thirty years of incarceration Petitioner faced if he proceeded to trial. The Circuit Court's conclusion on counsel's performance is supported by the record and is entitled to deference.

The Circuit Court also concluded that Petitioner could not demonstrate prejudice. The Circuit Court made findings of fact that contradict Petitioner's claim that he would have rejected the plea and proceeded to trial if he had known the guideline range was twelve to eighteen years. These facts include: the case was not a guidelines plea; Petitioner was advised by the court he could receive a sentence up to twenty years in prison notwithstanding the guidelines; Petitioner was advised by his counsel of the change in the guidelines prior to the sentence pronouncement; and Petitioner could have received a sentence up to one hundred thirty years in prison if he had proceeded to trial. Petitioner has failed to dispute the Circuit Court's findings of fact by clear and convincing evidence. Indeed, it would not have been an objectively rational decision for Petitioner to withdraw his guilty plea and face effective life imprisonment when he knew the judge could sentence him up to twenty years, regardless of the guideline range.

The court has reviewed the entire state court record and concludes that Petitioner has failed to establish that the Circuit Court's rejection of his ineffective assistance of counsel claim was contrary to or an unreasonable application of federal law. For the foregoing reasons, the court finds no merit to Petitioner's claim of ineffective assistance of counsel.

## Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *See Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003). Because the court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Petitioner has not made the requisite showing. Accordingly, the court declines to issue a certificate of appealability. He may request that the United States Court of Appeals issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## Conclusion

Petitioner has set forth no grounds upon which relief may be granted by this court and he cannot meet the burden imposed by 28 U.S.C. § 2254(d). Petitioner cannot show that his trial counsel's performance was constitutionally deficient, nor can he establish that he was prejudiced by the alleged error. Accordingly, the Petition shall be denied and dismissed with prejudice. A separate Order follows.

February 9, 2022                                              /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge